COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Clements
Argued at Richmond, Virginia


JERMAINE LEON THURSTON
                                            MEMORANDUM OPINION[*] BY
v.        Record No. 1329-07-2                  JUDGE LARRY G. ELDER
                                               SEPTEMBER 30, 2008
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                      F. Ward Harkrader, Jr., Judge Designate

             Deborah C. Wyatt (Wyatt & Associates PLC, on briefs), for
             appellant.

             Richard B. Smith, Special Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


       Jermaine Leon Thurston (appellant) appeals from his jury trial conviction for voluntary

manslaughter.  On appeal, he contends the evidence was insufficient to support his conviction

because it "raised a reasonable doubt of self defense as a matter of law."  We hold the evidence,

viewed in the light most favorable to the Commonwealth, supported a finding that if appellant

was entitled to act in self-defense, the amount of force he used was not reasonable in relation to

the harm threatened.  Thus, we affirm his conviction.

       When considering the sufficiency of the evidence on appeal in a criminal case, we view

the evidence in the light most favorable to the Commonwealth, granting to the evidence all

reasonable inferences fairly deducible therefrom.  Higginbotham v. Commonwealth, 216 Va.

349, 352, 218 S.E.2d 534, 537 (1975).  The credibility of a witness, the weight accorded the

testimony, and the inferences to be drawn from proven facts are matters to be determined by the

_____
       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fact finder.  Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).  Further, the fact finder may accept some parts of a witness' testimony and reject others.  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).  "The fact that a witness makes inconsistent statements . . . does not render his testimony . . . unworthy of belief. . . .  It is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements on the stand is a question for the jury . . . ."  Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989).  The jury's verdict "shall not be set aside unless it appears from the evidence that [the verdict] is plainly wrong or without evidence to support it."  Code § 8.01-680; Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

"Self-defense is an affirmative defense . . . , and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence . . . that raises a reasonable doubt in the minds of the jurors [as to the defendant's guilt of the underlying offense].'"  Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001) (quoting McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978)). "Although undisputed facts may establish self-defense as a matter of law, whether the accused establishes that he . . . acted in [self-defense] is generally a question of fact."  Lynn v. Commonwealth, 27 Va. App. 336, 353, 499 S.E.2d 1, 9 (1998) (citation omitted).  As with any determination necessitating factual findings, "[t]he trier of fact determines the weight of the evidence in support of a claim of self-defense."  Gardner v. Commonwealth, 3 Va. App. 418, 426, 350 S.E.2d 229, 233 (1986).

A claim of self-defense may be classified as "either justifiable or excusable; if it is [proved to be] either, the accused is entitled to an acquittal."  Lynn, 27 Va. App. at 353, 499 S.E.2d at 9.

> Justifiable self-defense arises when the defendant is completely
> without fault.  In such a case, the defendant need not retreat, but is

- 2 -

permitted to stand his ground and repel the attack by [*reasonable*] force, including deadly force, *if it is necessary*. Excusable self-defense arises when the defendant, who was at some fault in precipitating the difficulty, abandons the fight and retreats as far as he safely can before he attempts to repel the attack.

Foote v. Commonwealth, 11 Va. App. 61, 67-68, 396 S.E.2d 851, 855 (1990) (citations omitted) (emphasis added).

"Whether the danger facing the accused is 'reasonably apparent' is determined from the viewpoint of the accused at the time [of the shooting]. However, fear alone does not excuse the killing; there must be an overt act indicating the victim's imminent intention to kill or seriously harm the accused." Smith v. Commonwealth, 17 Va. App. 68, 71-72, 435 S.E.2d 414, 416-17 (1993) (quoting McGhee, 219 Va. at 562, 248 S.E.2d at 810). Once the evidence establishes some overt act, prior specific acts of violence committed by the deceased are admissible, whether or not the accused knows of them. Randolph v. Commonwealth, 190 Va. 256, 264, 56 S.E.2d 226, 230 (1949). Prior acts of violence known to the accused are relevant to the reasonableness of the accused's fear. Edwards v. Commonwealth, 10 Va. App. 140, 142, 390 S.E.2d 204, 206 (1990). If such acts were not known to the accused, their existence is still relevant to prove the deceased was the aggressor. See id.

Finally,

the law of self-defense is the law of necessity. A person only has the privilege to exercise reasonable force to repel the assault. "The privilege to use such force is limited by the equally well recognized rule that a person 'shall not, except in extreme cases, endanger human life or do great bodily harm.' . . . *[T]he amount of force used must be reasonable in relation to the harm threatened.*" Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 26 (1989) [(citation omitted)].

Foote, 11 Va. App. at 69, 396 S.E.2d at 856 (citations omitted) (emphasis added). Thus, a person may use deadly force in self-defense only if confronted with deadly force.

- 3 -

A firearm, when used for its intended purpose of expelling a projectile through the means of an explosion, Armstrong v. Commonwealth, 263 Va. 573, 584, 562 S.E.2d 139, 145 (2002), may be found to be a deadly weapon. See Hampton v. Commonwealth, 34 Va. App. 412, 419-20, 542 S.E.2d 41, 44-45 (2001) (holding that a deadly weapon, as defined by Virginia law, is "any object or instrument, not part of the human body, that is likely to cause death or great bodily injury because of the manner and under the circumstances in which it is used"). Human fists, by contrast, ordinarily are not considered deadly weapons. See Roark v. Commonwealth, 182 Va. 244, 250, 28 S.E.2d 693, 696 (1944) ("'[F]ists may not . . . be regarded generally, as a deadly weapon; but they become most deadly, by blows . . . applied to vital and delicate parts of the body of a defen[s]eless, unresisting man, on the ground'" (quoting M'Whirt's Case, 44 Va. (3 Gratt.) 594, 611 (1846))).

Here, assuming without deciding appellant was without fault in beginning the altercation that took place on South First Street,[1] the doctrine of self-defense nevertheless permitted appellant to use deadly force against Lamont Reaves only if he reasonably feared that Reaves would kill him or cause him serious bodily harm. Here, the evidence supported a finding that the degree of force appellant used was not reasonable in relation to the harm threatened by Reaves. Reaves expressly threatened appellant only with his fists, not with the baseball bat Reaves had displayed earlier at Friendship Court. The record contained no evidence that Reaves mentioned the bat or that appellant had any reason to believe Reaves intended to use it or even had it with him at South First Street.[2]

---

[1] Because we make this assumption, we need not consider whether the evidence compelled the conclusion that appellant attempted to retreat from Lamont Reaves by moving toward the "cut" between the residences on South First Street.

[2] The bat was later found in Te'arra Goins's Explorer, indicating Reaves took it with him when he went from Friendship Court to South First Street, but nothing in the record indicates

Further, although Commonwealth's witness Curtis Glover testified that Reaves threatened to "fuck [appellant] up" as Reaves claimed previously to have done to appellant's companion, Omar Miller, Glover admitted appellant was his "best friend," and the jury was not required to accept the portion of Glover's testimony concerning Reaves's alleged threat. The jury also was not required to accept the testimony of Omar Miller, offered by appellant, that Miller had been hospitalized following a fight with Reaves five or six years earlier, while the two were in high school. Even if the jury did accept that testimony, Miller admitted on cross-examination that he, Miller, threw the first punch in that earlier fight and that the injury he sustained resulted when he fell on his shoulder during the fight and not directly as a result of the blows Reaves delivered. Miller also admitted that he was not taken from the scene by ambulance and that he did not seek medical attention until a week later. Victim Reaves's undisputed disciplinary record for having been involved in one or more fistfights several years earlier in high school also did not compel the jury to find, as a matter of law, that appellant could reasonably have feared Reaves would kill him or cause him serious bodily harm on the night at issue.

On the undisputed facts, before Reaves had delivered a single blow, appellant responded to Reaves's challenge to fight by discharging his firearm at close range in Reaves's direction, piercing Reaves's chest and inflicting a fatal injury to his heart and lung. Although appellant's counsel argued no evidence established appellant intended to inflict a fatal wound when he fired the fatal shot, which pierced the right rather than left side of Reaves's chest, the finder of fact was entitled to infer appellant intended the natural and probable consequences of his acts. See, e.g., Schmitt v. Commonwealth, 262 Va. 127, 145, 547 S.E.2d 186, 198 (2001). The jury was

---

Reaves mentioned it or displayed it or that appellant had any knowledge that Reaves had brought it. Thus, the presence of the bat could not have contributed to appellant's fear of Reaves.

entitled to conclude that the natural and probable consequence of appellant's act of intentionally firing the gun at Reaves at close range was that the shot would cause Reaves's death.

We need not consider whether the evidence in the record, *if viewed in the light most favorable to appellant*, might have supported a finding that Reaves was capable of and likely to inflict great bodily harm on appellant with his fists, thereby justifying appellant's use of deadly force in self-defense. The jury, as the finder of fact, was entitled to reject this evidence and to conclude the record failed to prove appellant reasonably feared Reaves would kill him or cause great bodily harm.

For these reasons, we hold the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that if appellant was entitled to act in self-defense, the amount of force he used was not reasonable in relation to the harm threatened. Thus, we affirm his conviction.

<u>Affirmed.</u>